**UNITED STATES of America, Plaintiff,**

v.

**Fredrick FLETCHER, Defendant.**

**No. CR 87–4007.**

United States District Court,
N.D. Iowa, W.D.

Sept. 22, 1987.

Lester Paff, Asst. U.S. Atty., Sioux City, Iowa, for plaintiff.

Kay E. Dull, Sioux City, Iowa, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

DONALD E. O'BRIEN, Chief Judge.

This matter is before the Court following a bench trial, as defendant waived his right to a jury trial and the government acceded to this waiver. After careful consideration of all the evidence, testimony and the parties' proposed findings of fact and conclusions of law, the Court finds the defendant guilty of the one count charged in the indictment.

### FINDINGS OF FACT

On February 18, 1987, the grand jury returned an indictment against Fredrick Fletcher, alleging that he knowingly and willfully mailed a parcel containing visual depictions of minors engaged in sexual activity, in violation of 18 U.S.C. § 2252(a)(1).

Postal Inspector Calvin Comfort initiated his investigation of Defendant Fletcher on May 8, 1986 as a result of defendant's name being included on a mailing list of a known child pornographer. (Government Exhibit 10). Inspector Comfort mailed defendant a questionnaire from "Midlands Data Research", which defendant completed, indicating an interest in pre-teen sex. (Government Exhibit 11). A previous postal inspector had mailed a similar questionnaire in 1984, which Mr. Fletcher had completed, also expressing an interest in pre-teen sex. (Government Exhibit 8). Inspector Comfort testified that when he took over the previous inspector's files, he decided to mail Defendant Fletcher a second questionnaire to determine whether defendant was still interested in child pornography. Another reason Comfort sent Fletcher a second questionnaire was because the defendant had indicated on the first questionnaire that he was interested in corresponding with others who shared his interests. Comfort testified that had defendant told him to get lost or indicated no interest, he would never have sent defendant the second questionnaire.

In the second questionnaire, defendant indicated he felt that the best age for a person's first sexual encounter was between the ages of eight and fifteen years. He also indicated that he usually bought his sexual materials by mail. On May 13, 1986, after receiving the completed questionnaire, Inspector Comfort sent defendant a letter listing five "pen pals" that defendant could correspond with regarding his interest. (Defendant's Exhibit 4). One of the names on the list was Carl Long, which was one of Inspector Comfort's undercover identities.

Defendant first wrote Carl Long on May 18, 1986. (Defendant's Exhibit 5). Inspector Comfort as Carl Long replied on May 21, 1986. (Defendant's Exhibit 6). A series of correspondence then occurred between defendant and Inspector Comfort as Carl Long, from May 22, 1986 to November 2, 1986. In a June 1, 1986 letter, defendant wrote "Long" stating that if "Long" wanted to see some of his pictures and magazines, "feel free to come up sometime."

(Government's Exhibit 13). On June 23, 1986, defendant wrote, asking if Carl (Long) wanted to hear tapes of defendant's fantasies. (Government Exhibit 15). On June 30, 1986, Inspector Comfort as Carl Long wrote to defendant, mentioning "Long's" twelve-year-old friend Andy, stating that defendant might like to write him in care of "Long." (Defendant's Exhibit 15A). On August 21, 1986, "Long" wrote to the defendant, asking whether defendant collected erotic photos of young boys. (Defendant's Exhibit 16C). Defendant replied on August 22, 1986, stating that he had three magazines "with some young guys in it." (Government Exhibit 17). Defendant also mentions the North American Man–Boy Love Association (NAMBLA). Defendant cautioned "Long," mentioning that NAMBLA's latest newsletter stated that the Midlands Data Research Corporation was a postal scam. Defendant warned "Long" to be careful. On September 4, 1986, "Long" wrote defendant, asking if he had ever traded for "boy stuff", or whether he had better luck buying pictures. (Defendant's Exhibit 17A). On September 25, 1986, defendant wrote "Long," stating that he had some pictures he could send to Long, but that he would want them back. (Government Exhibit 18). Inspector Comfort, posing as "Andy," wrote defendant on October 21, 1986, asking defendant to please send the pictures. (Defendant's Exhibit 18A).

The defendant complied on October 22, 1986 and wrote "Andy," stating, "If you want to see more, just let me know." (Defendant's Exhibit 18B). Inspector Comfort made a notation on a sheet attached to this letter, stating that he mailed these pictures back to the defendant, as they were not child pornography. On November 4, 1986, "Andy" wrote to defendant, asking whether the defendant had any more pictures of young guys "really naked". (Defendant's Exhibit 18C). After an exchange of several more letters, defendant mailed the pictures which are the subject of this indictment on November 14, 1986. (Government Exhibit 20). The government obtained a search warrant for defendant's home and

conducted the search on December 16, 1986. Government agents read defendant his Miranda rights, and defendant signed a Waiver of Rights form. Defendant Fletcher then gave the agents a signed statement. In his statement, defendant admitted mailing five magazines and a picture to "Carl Long." Defendant further stated that he had had sex with young boys ages thirteen through sixteen years old. Defendant moved to suppress his statement and the items seized pursuant to the warrant. This Court denied defendant's motion after a hearing (*see* No. 29 in the Clerk's Memorandum of Papers). Having heard all of the testimony and evidence, the Court finds the defendant guilty beyond a reasonable doubt.

## CONCLUSIONS OF LAW

■ At trial, defendant relied on an entrapment defense, and also argued outrageous government conduct. In order to establish entrapment,

> [t]he evidence must have clearly indicated that a government agent originated the criminal design; that the agent implanted in the mind of an innocent person the disposition to commit the offense; and that the defendant then committed the criminal act at the urging of the government agent.

*United States v. Shaw,* 570 F.2d 770, 772 (8th Cir.1978). The principal focus of this determination is upon the "intent or predisposition of the defendant to commit the crime." *United States v. Russell,* 411 U.S. 423, 429, 93 S.Ct. 1637, 1641, 36 L.Ed.2d 366 (1973). The predisposition question requires inquiry into the defendant's personal background to see "where he sits on the continuum between the naive first offender and the streetwise habitue." *United States v. Lard,* 734 F.2d 1290, 1293 (8th Cir.1984), *citing United States v. Townsend,* 555 F.2d 152, 155 n. 3 (7th Cir.), *cert. denied,* 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed. 2d 184 (1977).

In *United States v. Dion,* 762 F.2d 674, 687–88 (8th Cir.1985), *rev'd on other grounds,* 476 U.S. 734, 106 S.Ct. 2216, 90 L.Ed.2d 767 (1986), the Eighth Circuit cited ten factors used by the various circuits in determining predisposition. These include the readiness with which the defendant responded to the inducement offered, whether the defendant engaged in an existing course of conduct similar to the crime charged, the defendant's reputation, and the degree of coercion, if any, contributed by law enforcement. *Id.* at 687–88 (citations omitted).

Having considered the above legal principles as applied to the facts of this case, the Court concludes that the government established predisposition beyond a reasonable doubt. The Court believes that defendant's sexual preferences regarding teenage boys is one factor weighing in favor of predisposition. The Court admitted and considered Government's Exhibits 12 through 20 in this regard, on which the Court had previously reserved ruling. The Court also considered that portion of defendant's confession where he stated that he had had sex with young boys. The Court finds that this evidence is probative as to the defendant's predisposition, any prejudice is outweighed by the probative value. The Court is not persuaded by defendant's argument that the government must produce exact acts as those charged, in order to show predisposition. Defendant cited no case law for this proposition, nor has the Court been able to locate any after a careful search of Eighth Circuit entrapment cases.

Other factors supporting predisposition are defendant's completion of the questionnaires indicating his interest in child pornography and that he usually purchased these through the mail. Also, defendant promptly replied to the second questionnaire, indicating an interest in corresponding with others who shared his views. Government's Exhibit 9 contains a handwritten advertisement from the defendant. Defendant had completed an application for an advertisement with Crusaders For Sexual Freedom (CSF). Defendant stated that he "want[ed] to correspond or contact others who are into masturbation also pix of preteen/teen boys—would like to hear from anyone with same interests." The defendant signed and mailed this ad. The

mailing of this ad was not a subject of the indictment.

Government's Exhibit 10 is a report showing that defendant had been on a mailing list seized as part of the "Delta Project". Page 1 of Government's Exhibit 10 demonstrates that the Delta Project and the Lavendar Exchange were a nationwide pornography ring engaged in the production and distribution of child pornography. Defendant Fletcher testified he had received pictures through the Lavendar Exchange in the mail.

Defendant's prompt answer to the second contact by Midlands Data Research on March 17, 1986 is another indication of his predisposition. On March 20, 1986, Defendant Fletcher answered, stating he was "very much interested", and was awaiting further correspondence. Defendant Fletcher also quickly seized the opportunity to correspond with "Carl Long," mailing his first letter to "Long" within days after receiving the pen pal list. Defendant Fletcher was also the first one to mention sharing pictures. On June 1, 1986, the defendant wrote "Long," stating, "If you want to see some of my pictures and magazines, feel free to come up sometime." (Government Exhibit 13). Yet another fact indicating predisposition was defendant's warning to "Carl Long" about a postal scam. (Government Exhibit 17). Also, the defendant was the first one to suggest mailing his pictures to "Long." (Government Exhibit 18). While "Long" had previously asked whether defendant had ever traded any "boy stuff" before (Defendant's Exhibit 17–A), "Long" did not initially suggest that the defendant mail his pictures. While "Long" did ask the defendant in a later letter whether he had any more pictures (Defendant's Exhibit 18C), the Court does not believe that this planted the seed of criminal conduct in the defendant's mind, as Defendant Fletcher had already indicated his willingness to send his pictures through the mail, even though the first pictures sent were not considered to be child pornography.

*United States v. Thoma,* 726 F.2d 1191 (7th Cir.1984), involved a postal investigation almost identical to the one here. In *Thoma,* the court found no entrapment, stating,

> [t]hat the goverrment merely offered an opportunity to commit a crime, coupled with what can at most be described as mild inducement, does not support a claim of entrapment.

*Id.* at 1198. The Court finds that Agent Comfort merely offered Defendant Fletcher the opportunity to commit a crime, and that the government established defendant's predisposition beyond a reasonable doubt.

■ Defendant Fletcher also argued that apart from any predisposition on his part, the government's conduct was so outrageous as to deprive him of due process. The Court does not believe that the government's conduct here was "so outrageous that due process principles should bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). As the Eighth Circuit has stated,

> [i]n seeking to detect and punish crime, law enforcement agencies frequently are required to resort to tactics which might be highly offensive in other contexts. Granting that a person is predisposed to commit an offense, we think that it may safely be said that investigative officers and agents may go a long way in concert with the individual in question without being deemed to have acted so outrageously as to violate due process or evoke the exercise by the courts of their supervisory powers so as to deny to the officers the fruits of their misconduct.

*United States v. Quinn,* 543 F.2d 640, 648 (8th Cir.1976).

IT IS THEREFORE ORDERED that the defendant is found guilty of one count of violating 18 U.S.C. § 2252(a)(1), as charged in the indictment.

IT IS FURTHER ORDERED that a presentence report shall be completed within thirty days from the date of this order.

IT IS FURTHER ORDERED that sentencing in this cause is set for Monday, October 26, 1987 at 9:30 a.m.